# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# NORTHEASTERN DIVISION

| | |
|---|---|
| PAUL CARL KIRTLAND, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No.: 5:13-CV-2175-VEH |
| | ) |
| CAROLYN W. COLVIN, ACTING | ) |
| COMMISSIONER, SOCIAL | ) |
| SECURITY ADMINISTRATION, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION

## I.    INTRODUCTION

Plaintiff Paul Carl Kirtland ("Kirtland") brings this action under 42 U.S.C. § 405(g), Section 205(g) of the Social Security Act. He seeks review of a final adverse decision of the Commissioner of the Social Security Administration ("Commissioner"), who denied his application for disability insurance benefits ("DIB") and Supplemental Security Income ("SSI").[1] Kirtland timely pursued and exhausted his administrative remedies available before the Commissioner. The case

---

[1] In general, the legal standards applied are the same regardless of whether a claimant seeks Disability Insurance Benefits ("DIB") or SSI. However, separate, parallel statutes and regulations exist for DIB and SSI claims. Therefore, citations in this opinion should be considered to refer to the appropriate parallel provision as context dictates. The same applies to citations of statutes or regulations found in quoted court decisions.

is thus ripe for review under 42 U.S.C. § 405(g).[2] The court has carefully considered the record and, for the reasons which follow, finds that the decision of the Commissioner is due to be **AFFIRMED**.

## II.    FACTUAL AND PROCEDURAL HISTORY

Plaintiff was forty-five years old on his date last insured, December 31, 2011. (Tr. 180). He has a high school education (Tr. 187) and previously worked as a tractor trailer truck driver, gate guard, warehouse worker, and short order cook. (Tr. 56, 203). Kirtland alleged disability due to back pain, knee pain, feet neuropathy, high blood pressure, diabetes, high cholesterol, pulmonary disease, depression, chronic pain, cardiac problems, arthritis, acid reflux, neuropathy, blurred vision, and memory loss (Tr. 186). He alleged that he became disabled on January 11, 2007. (Tr. 151, 153). However, the ALJ noted that he had a previous unfavorable decision on July 28, 2009 and found no reasons for reopening that decision. (Tr. 12, 65-77).[3] Accordingly, the ALJ's determination of disability concerned the period beginning July 29, 2009 and running through the date of the decision.[4]

Kirtland protectively filed applications for a period of DIB and SSI on May 28,

---

[2] 42 U.S.C. § 1383(c)(3) renders the judicial review provisions of 42 U.S.C. § 405(g) fully applicable to claims for SSI.

[3] Kirtland does not challenge this determination.

[4] *See* 42 U.S.C. § 405(h); 20 C.F.R. §§ 404.955, 404.981, 404.987, 422.210(a) (2013).

2010. (Tr. 12, 151, 153). The Social Security Administration denied these applications on September 20, 2010. (Tr. 90). Kirtland timely requested and appeared at a hearing before an administrative law judge ("ALJ"). (Tr. 28, 100). The hearing was held on January 25, 2012, and the ALJ issued a decision, dated April 12, 2012, denying his application. (Tr. 26). The Appeals Council ("AC") denied Kirtland's request for review on September 30, 2013. (Tr. 1-4).

Kirtland filed a complaint with this court on December 2, 2013, seeking review of the Commissioner's determination. (Doc. 1). The Commissioner answered on March 13, 2014. (Doc. 8). Kirtland filed a supporting brief (Doc. 11) on April 24, 2014, and the Commissioner responded with her own (Doc. 12) on May 27, 2014.

### III. **STANDARD OF REVIEW**

The court's review of the Commissioner's decision is narrowly circumscribed. The function of this court is to determine whether the decision of the Commissioner is supported by substantial evidence and whether proper legal standards were applied. *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002). This court must "scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support

a conclusion." *Id.* It is "more than a scintilla, but less than a preponderance." *Id*.

This court must uphold factual findings that are supported by substantial evidence. However, it reviews the ALJ's legal conclusions *de novo* because no presumption of validity attaches to the ALJ's determination of the proper legal standards to be applied. *Davis v. Shalala*, 985 F.2d 528, 531 (11th Cir. 1993). If the court finds an error in the ALJ's application of the law, or if the ALJ fails to provide the court with sufficient reasoning for determining that the proper legal analysis has been conducted, it must reverse the ALJ's decision. *Cornelius v. Sullivan*, 936 F.2d 1143, 1145-46 (11th Cir. 1991).

**IV.   STATUTORY AND REGULATORY FRAMEWORK**

To qualify for disability benefits and establish his or her entitlement for a period of disability, a claimant must be disabled as defined by the Social Security Act and the Regulations promulgated thereunder. The Regulations define "disabled" as "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve (12) months." 20 C.F.R. § 404.1505(a). To establish an entitlement to disability benefits, a claimant must provide evidence about a "physical or mental impairment" which "must result from anatomical, physiological, or psychological abnormalities which can

be shown by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. § 404.1508.

The Regulations provide a five-step process for determining whether a claimant is disabled. 20 C.F.R. § 404.1520(a)(4)(i-v). The Commissioner must determine in sequence:

> (1) whether the claimant is currently employed;
> (2) whether the claimant has a severe impairment;
> (3) whether the claimant's impairment meets or equals an impairment listed by the [Commissioner];
> (4) whether the claimant can perform his or her past work; and
> (5) whether the claimant is capable of performing any work in the national economy.

*Pope v. Shalala*, 998 F.2d 473, 477 (7th Cir. 1993) (citing to formerly applicable C.F.R. section), *overruled on other grounds by Johnson v. Apfel*, 189 F.3d 561, 562-63 (7th Cir. 1999); *accord McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986). The sequential analysis goes as follows:

> Once the claimant has satisfied steps One and Two, she will automatically be found disabled if she suffers from a listed impairment. If the claimant does not have a listed impairment but cannot perform her work, the burden shifts to the [Commissioner] to show that the claimant can perform some other job.

*Pope*, 998 F.2d at 477; *accord Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995). The Commissioner must further show that such work exists in the national economy in significant numbers. *Id*.

**V.   ALJ FINDINGS**

After consideration of the entire record, the ALJ made the following findings:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2011.

2. The claimant has not engaged in substantial gainful activity since January 11, 2007, the alleged onset date.

3. The claimant has the following severe impairments: mild to moderate osteoarthritis in the left knee, moderate to severe thoracolumbar spondylosis with degenerative disk disease and degenerative joint disease, morbid obesity, bilateral osteoarthritis in both knees, and degenerative disk disease.

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404 404.1527(b) and 416.967(b). This is limited by occasional walking and standing, up to four hours a day in an eight-hour day; occasional balancing, stooping, kneeling, crouching, crawling and climbing ramps and stairs. He cannot climb ladders, ropes, or scaffolds. He requires the option to sit or stand during the workday. He must avoid unprotected heights and commercial driving. He can perform occasional overhead work and bending. He may be expected to miss less than two days a month due to his symptoms.

6. The claimant is capable of performing past relevant work as a past guard, DOT #372.667-030. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity, as the vocational expert testified (20 CFR 404.1565 and 416.965).

7. The claimant has not been under a disability, as defined in the Social Security Act, from January 11, 2007, through the date of this decision

(20 CFR 404.1520)(f) and 416.920(f)).

(Tr. 15-21).

## VI. **ANALYSIS**

The court may only reverse a finding of the Commissioner if it is not supported by substantial evidence. 42 U.S.C. § 405(g). "This does not relieve the court of its responsibility to scrutinize the record in its entirety to ascertain whether substantial evidence supports each essential administrative finding." *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) (citing *Strickland v. Harris*, 615 F.2d 1103, 1106 (5th Cir. 1980)).[5] However, the court "abstains from reweighing the evidence or substituting its own judgment for that of the [Commissioner]." *Id.* (citation omitted).

Kirtland urges the court to reverse the Commissioner's decision to deny him benefits on several grounds. (Doc. 11). First, he argues that the ALJ's findings on his residual functional capacity ("RFC") were internally inconsistent or contradictory. Second, Kirtland contends that the ALJ did not adequately consider an opinion from the Alabama Department of Rehabilitation Services, which determined that he did not have potential for employment due to his medical conditions. Third, and finally, he alleges that the ALJ did not properly take into account his pain and obesity in her

---

[5] *Strickland* is binding precedent in this Circuit. *See Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc) (adopting as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981).

findings on his RFC. Having reviewed the evidence and the parties' briefs, this court finds that the ALJ applied the correct legal standards and that her decision was supported by substantial evidence.

> A. The ALJ Committed No Errors In Her Findings On Kirtland's Abilities To Walk And Stand.

Kirtland argues that the ALJ did not follow the correct legal standards in her findings on his RFC. (Doc. 11 at 7-9). Specifically, he argues that the ALJ's determination that Kirtland could perform light work is "contradictory" to her finding that he is limited to occasionally — that is, for up to four hours in an eight-hour day — walking and standing. (*Id*. at 7). Kirtland points out that "light work," as defined by the Social Security Administration, requires the ability to spend up to six hours or two-thirds of the day on one's feet, walking, and standing up. (*Id.*). This, he alleges, renders the RFC findings internally "inconsistent." (*Id*. at 15).

The court is puzzled by this argument, as it seems to misunderstand the basic framework of an RFC assessment: a classification of the claimant's maximum exertional abilities as sedentary, light, medium, or full, and then a specification of any additional limitations. *See* SSR 83-10, 20 C.F.R. § 404.1545. The ALJ found that Kirtland "has the residual functional capacity to perform light work . . . limited by occasional walking and standing, up to four hours a day in an eight-hour day." (Tr. 15). It is in no way contradictory for the ALJ to find that Kirtland could perform light

8

work with certain limitations, including the ability to walk and stand for only four hours a day. This is two hours less than required for "the full range of light work," SSR 83-10, but the ALJ did not find that Kirtland could perform the <u>full range</u> of light work.[6] The ALJ's findings on Kirtland's RFC were internally consistent and applied the correct legal standards.

Relatedly, Kirtland contends that the ALJ failed to "properly delineate the total amount of time [the] claimant can sit and stand where postures must be alternated," as required by SSR 96-8P and SSR 83-12. (Doc. 11 at 7). The ALJ's RFC finding stated, "He requires the option to sit or stand during the workday." (Tr. 15). Kirtland argues, "It is not clear that this choice could be exercised where standing in conjunction with walking is limited to four hours." (Doc. 11 at 7).

During the hearing, the ALJ posed a hypothetical question to a vocational expert that asked whether any job would be possible for a claimant who had Kirtland's education, training, and work experience, could only walk and stand for up to four hours a day, and required the option to sit or stand during the workday. (Tr. 58-59). She specified that this meant that "if sitting [the claimant] could stand for one to two minutes, [and] if standing [the claimant] could sit for one to two minutes." (Tr. 59).

---

[6] Indeed, the Social Security Administration has said that light work includes a job that "involves <u>sitting most of the time</u> but with some pushing and pulling of arm-hand or leg-foot controls, which require greater exertion than in sedentary work." SSR 83-10 (emphasis added).

This is a precise delineation of the sit-stand option, which the VE's response — that this hypothetical claimant could perform Kirtland's past relevant work as a gate guard — relied on. (*Id*.). Therefore, Kirtland's argument is without merit.[7]

### B. There Was No Error In The ALJ's Consideration Of A Vocational Assessment

Kirtland also argues that the ALJ erred by failing to give sufficient consideration to the opinion of a case worker from the Alabama Department of Rehabilitation Services stating that he (Kirtland) could not be put to work. (Doc. 11 at 12). This opinion was based on a vocational assessment that concluded, "Based on evaluation results and observations, it is felt that Mr. Kirkland [*sic*] does not exhibit potential for employment at this time based on his medical condition." (Tr. 266). The ALJ discussed this assessment in her findings but did not assign it any weight. (Tr. 20).

An ALJ is obligated to consider a relevant opinion from a non-medical source who has seen the claimant in a professional capacity, and is supposed to provide a discussion of that opinion in her decision. SSR 06-03P; 20 C.F.R. § 404.1513. However, the ALJ is not required to assign any weight to the opinion. SSR 06-03P.

---

[7] Kirtland also asserts, "In any event it does not appear that Plaintiff would gain any relief from alternating positions in the context of continuing work and moreover in combination with morbid obesity." He provides no evidence for the claim that alternating positions during work would have no effect on his pain, and the court has found none. The issue of obesity is discussed *infra,* Part VI.C.

10

Opinion evidence from non-medical sources is evaluated by a variety of factors, including the opinion's consistency with other evidence and the degree to which the source presents evidence to support that opinion. *Id*. Regardless of its source, there is no special weight given to an opinion on whether a claimant is disabled, because that issue is reserved for the Commissioner. 20 C.F.R. § 404.1527(d).

In this case, the ALJ's treatment of the vocational assessment committed no errors. She gave reasons for disregarding the opinion of the case workers, and those reasons are supported by substantial evidence. (Tr. 20). The vocational assessment tests indicated that Kirtland had average to above-average abilities in traits necessary for employment. (Tr. 264-66). However, as the ALJ noted, the vocational counselors found him "not [to] exhibit potential for employment at this time." (Tr. 20, 266). This "finding" is not supported by the testing results; it appears to be based on Kirtland's self-reported diagnosis of osteoarthritis and other physical ailments. (Tr. 20, 266). The ALJ also noted that the vocational assessment mentioned Kirtland's statement that he had been searching for a security guard job without success. (Tr. 20, 266). The ALJ correctly wrote that whether a claimant can be expected to perform his relevant work is not dependent upon whether that work currently exists even in the national economy, let alone in the area near the claimant. (Tr. 20); *see* 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 416.965(b)(3). Therefore, the ALJ had good reasons not to

11

assign any weight to the conclusions of this vocational assessment.

    C.    <u>The ALJ Committed No Errors With Regards To Kirtland's Obesity</u>

Kirtland also contends that the ALJ did not adequately account for his obesity in her findings on his RFC. (Doc. 11 at 9-10). He refers to his high Body Mass Index and a Social Security Ruling (SSR 02-1p) that describes how obesity can lead to exertional limitations and other negative effects. (*Id.*). However, Kirtland does not give any argument for why his obesity imposes greater restrictions than found by the ALJ.[8]

At several points in her decision, the ALJ considered Kirtland's obesity. She found him to have the severe impairment of morbid obesity. (Tr. 15). Furthermore, in her discussion of his medical history, she also noted parts of the record that pertained to his weight and recommendations from his physicians that he try to lose weight. (Tr. 17, 19). Kirtland has not provided, nor is the court aware of, any reasons that his obesity prevents him from performing light work with up to four hours of standing or sitting, with the option to sit or stand, as found by the ALJ in her assessment of his

---

[8] Similarly, Kirtland also asserts that the ALJ did not "adequately account for pain in the RFC findings," and summarizes the Eleventh Circuit's pain standard, but neglects to identify any specific error in the ALJ's analysis. (Doc. 11 at 11). Therefore, Kirtland has waived the argument. *See, e.g., Cheffer v. Reno*, 55 F.3d 1517, 1519 n. 1 (11th Cir. 1995) (ruling that an issue listed in the brief's statement of issues but not addressed in the brief is abandoned). Furthermore, insofar as this section discusses evidence supporting the ALJ's findings on Kirtland's RFC, it also contradicts the notion that his pain restricted him more extensively than the ALJ found.

RFC.

To the contrary, the ALJ's findings are supported by substantial evidence. First, an evaluation on January 8, 2008, by Randy Caudle, an occupational therapist at the Highlands Medical Center, found that Kirtland was capable of performing physical work at the medium level, although he might require additional breaks to rest.[9] (Tr. 359, 361). This, of course, was a <u>less</u> restrictive level of exertion than found by the ALJ. Caudle also found limitations on Kirtland's ability to stoop, squat, balance, and do floor level lifting, all of which are echoed in the RFC findings. (Tr. 15, 361).

Second, the rest of the record — particularly Kirtland's medical history and his function report— does not suggest that Kirtland's obesity restricts him more than found in the RFC. He testified in the hearing before the ALJ that he went shopping "once or twice a week" and could drive distances of less than 20 miles. (Tr. 46). In his function report from June 20, 2010, he also stated that he went fishing "every once in a while." (Tr. 214). None of the limitations that Kirtland claimed during his testimony at the ALJ hearing — that he could walk less than one block, could stand only for ten to fifteen minutes, had to spend a third of the day with his legs elevated, and had to lie down three to four times a day for 20 to 45 minutes — were suggested by a

---

[9] However, Caudle also noted that Kirtland gave maximum effort on only 75% of the physical tests, introducing some uncertainty as to Kirtland's <u>need</u> to rest. (Tr. 361).

physician in the medical record.

## VI.  <u>CONCLUSION</u>

Based upon the court's evaluation of the record and the parties' submissions, the court finds that the Commissioner's decision is supported by substantial evidence and that she applied proper legal standards in arriving at it. Accordingly, the court will affirm the decision by separate order.

**DONE** and **ORDERED** this the 20th day of January, 2015.

_____
**VIRGINIA EMERSON HOPKINS**
United States District Judge